FILED
2023 May-30  AM 09:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **TINA MARIE CLEM,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | **Case No. 5:23-cv-00003-LCB** |
| **KILOLO KIJAKAZI, Acting** | § | |
| **Commissioner Social Security** | § | |
| **Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## OPINION & ORDER

Tina Clem seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for disability benefits. (Doc. 7 at 1.) Specifically, Clem challenges the administrative law judge's evaluation of Clem's subjective testimony regarding the symptoms and limitations of her mental impairments. (Doc. 7 at 11−12.) The Court carefully considered the record, and for the reasons expressed herein, it **AFFIRMS** the Commissioner's decision.

## I.     BACKGROUND

### A.     Statutory Framework

The Social Security Act defines disability, in relevant part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . expected to last for a continuous period of not

1

less than 12 months." 42 U.S.C. § 423(d)(1). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" that is the result of "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). An individual is deemed disabled only if the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2).

In light of that framework, an administrative law judge ("ALJ") reaches a disability determination pursuant to a sequential, five-step analysis:

(1)  Is the claimant engaged in substantial gainful activity?
(2)  Does the claimant have a severe impairment?
(3)  Does the claimant have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?
(4)  Is the claimant able to perform former relevant work?
(5)  Is the claimant able to perform any other work within the national economy?

20 C.F.R. § 404.1520(a), 416.920(a); *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The steps are progressive; for example, an ALJ reaches step 4 only if a claimant is not engaged in substantial gainful activity ("SGA") (step 1), has a severe impairment (step 2), and does not have an impairment or combination of impairments that meets or medically equals a listed impairment  (step 3). *See*

*McDaniel*, 800 F.2d at 1030; *see also Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996) (noting that claimant bears burden of proof through step four, and Commissioner bears burden of proof at step five).

If the claimant is able to perform former relevant work (step 4), then she is not disabled. *McDaniel*, 800 F.2d at 1030 (citing 20 C.F.R. § 416.920). To determine a claimant's ability to perform prior work, the ALJ must first determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004) (*superseded by statute on other grounds*, *Jones v. Soc. Sec. Admin*, 2022 WL 3448090, at *1 (11th Cir. Aug. 17, 2022)). RFC is "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). And "the task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin.*, 649 F. App'x 941, 945 (11th Cir. 2016) (citing 20 C.F.R. § 404.1546(c)).

## B.    Statement of Facts

Pursuant to Title II of the Social Security Act, Clem filed an application for disability benefits in December 2020. (Doc. 5-7 at 5.) In her application, she alleged that she suffers from several impairments including depression, post-traumatic stress disorder, anxiety, and back problems, and she claimed that her disability onset date was September 27, 2019. (Doc. 5-8 at 6−7.) Her date last insured was September 30, 2020. (Doc. 5-3 at 18.) The Social Security Administration denied the application

both initially and upon reconsideration. (Doc. 5-3 at 15.) Clem then filed a written request for a hearing. (Doc. 5-3 at 15.) On April 12, 2022, ALJ Lori J. Williams held a video hearing.[1] (Doc. 5-3 at 15.) Clem was 48 years old at the time, and she was represented by counsel at the hearing. (Doc. 5-3 at 15.) Rachel McDaniel, an impartial vocational expert, also testified at the hearing. (Doc. 5-3 at 15.) Roughly two months later, the ALJ issued an unfavorable decision. (Doc. 5-3 at 29.) Clem appealed that decision, and on November 8, 2022, the Appeals Council adopted the ALJ's decision as the final decision of the Commissioner. (Doc. 5-3 at 2.) Clem then initiated a timely civil action in this Court on January 4, 2023. (Doc. 1.)

### C.    The ALJ's Decision

The ALJ issued a written opinion explaining her decision that Clem did not qualify as being disabled under the Social Security Act. (Doc. 5-3 at 15−29.) In her opinion, the ALJ followed the five-step evaluation process. (Doc. 5-3 at 16.)  During the first three steps, she made the following findings: (1) Clem did not engage in SGA between her alleged disability onset date of September 27, 2019, and the date last insured, September 30, 2020 (i.e., the relevant time period); (2) Clem had several severe impairments—morbid obesity, degenerative joint disease/facet arthropathy of the lumbar spine at L4-5 and L5-S1, and a major depressive disorder with anxiety;

---

[1] The hearing was virtual due to health concerns presented by the COVID-19 pandemic. (Doc. 5-3 at 15.)

4

and (3) Clem did not have an impairment, or combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 5-3 at 18−19.)

Before proceeding to step four, the ALJ determined that Clem had the RFC to perform "light work,"[2] subject to some limitations, such as she could not interact with members of the general public, and she could only handle routine-tasks work, requiring no more than one- to three-step instructions. (Doc. 5-3 at 21.) At step four, the ALJ concluded that Clem's RFC precluded her from performing her past work, which included working as an electrical assembler, a telephone solicitor, a cashier, a circuit board assembler, and a chief telephone operator. (Doc. 5-3 at 26.) At step five, however, the ALJ considered Clem's age, education, work experience, RFC, and the testimony from the vocational expert and concluded that there were jobs in the national economy which Clem could perform. (Doc. 5-3 at 27−28.) Accordingly, the ALJ determined that Clem did not qualify for disability benefits under the Social Security Act. (Doc. 5-3 at 28.)

## II.   LEGAL STANDARD

Once the Commissioner renders a final administrative decision regarding a claimant's benefits, the claimant may seek judicial review in federal court. 42 U.S.C.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

§ 405(g). But the scope of judicial review is limited: the role of a federal court is to determine whether the correct legal standards were applied and whether the Commissioner's decision is supported by substantial evidence. *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal citation and quotation marks omitted). The court's "limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Thus, while the court must scrutinize the record as a whole, it must affirm if the decision is supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## III.   DISCUSSION

In her brief, Clem raises one assignment of error: that the ALJ erred in the ALJ's consideration of Clem's credibility and subjective complaints. (Doc. 7 at 11−12.) She claims that the reasons the ALJ gave for discrediting her allegations as to her mental health symptoms and limitations are not supported by substantial evidence, so the Commissioner's decision is due to be reversed. (Doc. 7 at 11−12.)

As provided in 42 U.S.C. § 423(d)(5)(A), "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." When a claimant attempts to establish his disability through subjective testimony, the ALJ must apply a three-part pain standard: there must be "'(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain [or symptoms] arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain [or symptoms].'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

If the ALJ concludes that the claimant suffers from a medical condition (i.e., an impairment) that could reasonably cause the alleged symptoms, she must evaluate the intensity and persistence of the symptoms to determine how they limit the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c), 416.929(c). When making that evaluation, the ALJ considers a variety of factors: the objective medical evidence; the claimant's daily activities; symptom location, duration, frequency, and intensity; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; treatment, other than medication, received for pain or symptoms; measures used to relieve pain or symptoms; and other factors concerning functional limitations and restrictions due

to symptoms. *Id.* The ALJ also considers any inconsistencies between the evidence and the claimant's testimony. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); Social Security Ruling 16-3p. "The ALJ may discredit the claimant's testimony regarding his subjective symptoms, but she 'must clearly articulate explicit and adequate reasons' for doing so." *Taylor v. Acting Comm'r of Soc. Sec.*, 761 F. App'x 966, 968 (11th Cir. 2019) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). In fulfilling that obligation, the ALJ need not "'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow [the reviewing court] to conclude the ALJ considered the claimant's medical condition as a whole." *Brown v. Barnhart*, 158 F. App'x 227, 228 (11th Cir. 2005) (per curiam) (quoting *Dyer*, 395 F.3d at 1211). A court will not disturb a clearly articulated finding that the record evidence is inconsistent with the claimant's testimony, provided that finding is supported by substantial evidence. *See Taylor v. Comm'r of Soc. Sec.*, 2022 WL 1634086, at *6 (11th Cir. May 24, 2022) ("We will not disturb '[a] clearly articulated credibility finding with substantial supporting evidence in the record.") (quoting *Foote*, 67 F.3d at 1561−62). At day's end, "it is the ALJ's responsibility to resolve the conflicts between the evidence and testimony presented." *Loveless v. Comm'r, Soc. Sec. Admin.*, 678 F. App'x 866, 868 (11th Cir. 2017) (citing *Moore*, 405 F.3d at 1212 (noting that "credibility determinations are the province of the ALJ")).

In her application for disability benefits, Clem alleged that she suffers from debilitating depression and anxiety symptoms, and her testimony at the hearing reiterated those allegations. (Doc. 5-3 at 50−72 and Doc. 5-8 at 24−31.) She testified that she suffers from manic episodes and severe mood swings that cause her to isolate herself and inhibit her ability to concentrate, sometimes for the entire day. (Doc. 5-3 at 52, 55−56.) As part of her mood swings, she stated that she has anger outbursts and that she has been known to throw and break items. (Doc. 5-3 at 52−53). Clem claimed she no longer goes anywhere because leaving the house triggers an anxiety attack. (Doc. 5-3 at 56−57, 61.) Due to her condition, she alleged that she now has difficulty communicating with other people outside her family. (Doc. 5-3 at 59.) She also reported that she suffered like symptoms when she was still employed. (Doc. 5-3 at 52−55, 60.) At work, she allegedly experienced manic episodes daily, and she even occasionally passed out due to an anxiety attack.[3] (Doc. 5-3 at 52−55, 60.)

Having considered Clem's subjective complaints and the rest of the evidence in the record, the ALJ, in her opinion, applied the pain standard and concluded that while Clem's medically determinable mental impairments "could reasonably be expected to cause some of the alleged symptoms," Clem's "statements concerning the intensity, persistence and limiting effects of [those] symptoms [were] not entirely

---

[3] Clem stopped working in 2017. (Doc. 5-8 at 16.)

consistent with the medical evidence and other evidence in the record."[4] (Doc. 5-3 at 22.) Said differently, the ALJ found that the symptoms caused by Clem's mental impairments were not as debilitating as Clem alleged.

The ALJ explained why she discredited Clem's subjective complaints. Specifically, the ALJ made the following statements:

> The claimant's testimony alleging while working she had significant difficulties with her depression, daily manic spells, and routine absences from work is not consistent with 2016-2017 medical records that are absent uncontrolled mental illness when working. Rather, the objective exams repeatedly show the claimant being alert, oriented, cooperative, and having normal mood, affect, attention span, and concentration, such as in June 2017 when primary care records include the use of Zoloft and Abilify (Exhibit C6F/23-24, 34). There are no records of uncontrolled symptoms physically or mentally to corroborate the routine absences from work she reports when working.
> . . . .
> The records of Wellstone Behavioral Health begin in October 2018 when the claimant was seen for major depression, single episode. She denied being depressed or anxious and reported medications (Zoloft, Hydroxyzine, Trazadone) work well. The practitioner recommended to continue medications and follow-up in six months (Exhibit C8F/63-64, 67). The practitioner only follow-ups for 2019 and 2020 have been as much as six months apart, as recommended, and she continues to be managed with those same medications with the addition of Vraylar for mood stability. The Zoloft and Vraylar are daily use and the Trazadone and Hydroxyzine (aka Vistaril) are "as needed" use. With such conservative course of care, the objective exams are repeatedly without abnormal finding and controlling symptoms such that the claimant has not required ER care, intensive outpatient treatment, or inpatient psychiatric hospitalization for symptom control. Moreover, she has not sought or required any urgent care visits at [sic] mental health between her scheduled follow-ups, which as previously mentioned have been as

---

[4] The ALJ reached the same conclusion with regard to Clem's physical impairments, but Clem did not challenge that conclusion in this matter.

much as six months apart. The objective exams include the claimant alone at visits, independent with giving history and making decisions about her treatment plan, and routinely showing for recommended follow-ups, which is indicative of responsible behavior, good judgment, and good memory functions.

The alleged disability onset date of September 27, 2019, is not remarkable in these mental health records. At the follow-up before that date, which was in July 2019, the claimant reported her mood is "ok" when at home and she recently had dinner out with her son and fiancé' [sic] at a buffet. Objectively, there was appropriate behavior and affect, euthymic mood, and normal attention, concentration, and speech/vocabulary with no hallucinations/delusions or suicidal/homicidal plan or intent. She did not seek any care again until her recommended follow-up in November 2019. That visit is 1-2 months after the alleged disability onset date and the same good objective findings are documented. The practitioner only follow-ups continue during 2020 and they were two and/or three months apart when the same medications were continued with the addition of Vraylar that she reports helps with mood stability. At her three-month follow-up in April 2020, she denied being bothered by the Covid-19 quarantine and reported better sleep, energy, and weight loss. The July 2020 follow-up is when she reported having been out of Vraylar for two weeks recently due to a pharmacy problem, but she has resumed use and has an "ok" mood. She reported improved eating habits with weight loss and that she recently got a tattoo. She takes Hydroxyzine only as needed "occasionally when she has to get out of the house". Her objective exams in April and July remained normal, she again denied thoughts of harm to self or others, and medication management was continued with mention that Vraylar could be adjusted for depression/energy if needed. The September 28, 2020 exam remained normal and she was continued on the same medications with an increase to Vraylar to target symptoms she reported although not evident on exam, no change to Zoloft, and instructions to resume as needed use of Trazadone and Hydroxyzine (aka Vistaril) (Exhibit C8F). She did not return until her scheduled follow-up in November.

In sum, the mental health records include the claimant's depression with anxiety is under control with medication management and practitioner followups months apart without any therapy/counseling or

formal interventions otherwise. The above finding accommodates the mental impairments with limitations to simple routine tasks work, simple decision making, no more than 1-3 step instructions, and infrequent and well-explained workplace changes as well as work requiring only occasional interaction with coworkers and supervisors and no interaction with the public. The records are indicative of good recall/memory functions, as evident by the claimant's reports of specifics about medication use, daily activities, etc., between visits, and even her adherence for years with scheduled visits. The repeatedly normal/intact/appropriate findings on objective exams are inconsistent with deficits of mental functioning to find greater limitation. The objective exams do not identify memory deficit and routinely include normal attention and concentration. The conservative course of care 2019-2020, including followups months apart with ongoing normal mental status exams at those visits is not consistent with excessive absences being a problem for work, as was indicated in hearing testimony. The are no employer or medical records documenting passing out from anxiety or daily manic episodes the claimant testified were a problem at work.

(Doc. 5-3 at 23−25.)

As evidenced in the excerpt above, the ALJ articulated explicit and specific reasons, supported by the record, for why she discredited, in part, Clem's subjective complaints regarding Clem's mental impairment symptoms. For instance, the ALJ noted that there was no evidence to explain why Clem's disability onset date was September 27, 2019, or to support her allegations that she suffered from severe symptoms when she was still employed. The ALJ also cited medical evidence of record to support her conclusions, such as Clem's "normal" objective psychiatric examinations from November 2019 and April and July 2020. At each of those examinations, the practitioner made the same observations: Clem's mood was

12

euthymic; she had appropriate affect; she demonstrated good concentration; and she was coherent, logical, and goal directed. (Doc. 5-11 at 61−62, 66−67, 77.)

This Court, having reviewed the entire record, finds that the ALJ's reasons are sufficiently supported by the record because a "reasonable person would accept [them] as adequate" to support the ALJ's decision to discount Clem's subjective complaints. In other words, the Court finds no basis for concluding that the ALJ's reasons lack substantial evidentiary support. The Court emphasizes that the ALJ gave some credence to Clem's subjective complaints and that she incorporated limitations in Clem's RFC based on Clem's mental impairments, including routine-tasks work; simple decision making, no more than 1-3 step instructions; infrequent and well-explained workplace changes; only occasional interaction with coworkers and supervisors; and no interaction with the public. (Doc. 5-3 at 21.) As such, it is clear to the Court that the ALJ "considered [Clem's] medical condition as a whole," and the Court will not second-guess the ALJ's determination that there were inconsistencies between Clem's subjective complaints and the evidence in the record that undermined Clem's allegations as to the full extent of her limitations.

Clem offers no meaningful argument to the contrary. Her main argument is that "the ALJ ignore[d] the actual assessment by the mental health professionals" because during the relevant time period, the medical evidence shows that Clem's mental impairments only worsened. (Doc. 7 at 12.) Clem cites several notations from

her appointments at Wellstone Behavioral Health, such as some from January 2020, when Clem reported her anxiety was worse, and from November 2019, when the status for Clem's "mood/instability" read "Not Controlled," and the status for her depression read "Worsening." (Doc. 7 at 13.) But Clem's argument merely points to evidence that supports her preferred outcome—it does not change the fact that the several reasons the ALJ gave for discounting Clem's subjective complaints are supported by substantial evidence in the record.

## IV.   CONCLUSION

The Court thus **AFFIRMS** the Commissioner's decision. A final judgment will be entered separately.

**DONE** and **ORDERED** May 30, 2023.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE